FILED CLERK
SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK  2012 MAR -8 AM 11: 14

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

------------------------------------------------------------- x

KUMAR RAWATIRAMAN individually and on behalf of his infant child A.P.

                                            Plaintiffs,

-against-

THE CITY OF NEW YORK, POLICE OFFICER JENNIFER CITTADINO SHIELD# 14294, AND JOHN DOE POLICE OFFICERS #1-2,

                                            Defendants.

**COMPLAINT AND JURY DEMAND**

**ECF CASE**

CV 12 - 1126

AMON, CH.J.

LEVY, M.J.

------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiffs seek relief for the violation of their rights secured by 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2. The claims arise from a June 4, 2011 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things, assault, trespass, false arrest, and interference with familial relationships.

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution. Pendent party jurisdiction and supplementary jurisdiction over plaintiffs' state law claims are asserted.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

6. Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within, and the events occurred within, the boundaries of the Eastern District of New York.

## PARTIES

7. Plaintiff Kumar Rawatiraman is a legal resident of the United States and at all times here relevant, resided in Queens County, New York. Plaintiff A.P. is a citizen of the Untied States and, at all times here relevant, resided with her father Kumar Rawatiraman in Queens County, New York.

8. The City of New York is a municipal corporation organized under the laws of the State of New York.

9. All others individual defendants ("the officers") are employees of the NYPD, and are sued in their individual capacities.

10. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

11. Within 90 days of the events giving rise to this claim, plaintiffs filed written notice of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

12. On June 4, 2011, plaintiff Rawatiraman spent the day repairing and rebuilding the bathroom in his home at 107-35 127th St., Queens, NY. He shares the home with his wife and

ten year old child, A.P.

13. At approximately 9:30PM, plaintiff stepped just outside his home, still within his gated yard, and started talking with a friend. Defendant Cittadino crossed the street and approached plaintiff. She demanded to see his identification. Plaintiff asked why defendant Cittadino needed to see his identification considering he was standing inside his own gated yard. She continued to insist that he produce identification. Plaintiff agreed to cooperate but explained his identification was inside his home and he would need a moment to retrieve it. Officer Cittadino told him to go inside and get it. Plaintiff walked into his home.

14. Defendant Cittadino entered the gated yard and approached the front door. Plaintiff's wife was standing in the door, explained her husband was grabbing his identification, and asked the officer to please wait outside. Within seconds, plaintiff Rawatiraman had his ID and opened his door to come back outside. Defendant Cittadino instead rushed into the home, pushed plaintiff's wife aside and grabbed plaintiff. The officer violently turned plaintiff around, grabbed him around the neck and threw him to the floor in his hallway.

15. Defendant Cittadino's partner, who had been across the street, came running into the home. He told officer Cittadino to get off of plaintiff and, without any resistance, lifted plaintiff from the floor and handcuffed him. Plaintiff was escorted out of his home, in handcuffs and in the presence of his neighbors, and placed into a police car.

16. Approximately 20 hours later, plaintiff was brought before a criminal court judge and charged with resisting arrest and disorderly conduct. All charges have been dismissed and sealed.

17. Plaintiff's child, A.P., was also inside the home at the time of the incident. She was in close proximity to the front door and witnessed the officer rush inside her home, grab her father

by the throat and slam him onto the floor. Frightened and hysterical, A.P. ran from the home to a neighbor's house. She was crying and shaking as she explained to the neighbor that she was afraid for her father. The neighbor agreed to take her in while A.P.'s parents were at the precinct. Since the incident, A.P. has been in counseling to try and deal with the trauma of these events.

18. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff, and agreed, shortly after the incident, not to report each others' illegal actions and to fabricate a story and falsely charge plaintiff with offenses, to justify the injuries.

19. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

20. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a. Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

    b. Violation of their right to Due Process of Law under the Fourteenth Amendment to the United Stated Constitution;

    c. Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d. Violation of their New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

e. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety and separation from family;

f. Loss of liberty;

g. Physical pain and suffering;

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

21. The above paragraphs are here incorporated by reference.

22. Defendants acted under color of law and conspired to deprive plaintiffs of their civil, constitutional and statutory rights to be free from unreasonable search and seizure, due process of law and familial relationships pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiffs under 42 U.S.C. §1983.

23. Defendants falsely arrested plaintiff and failed to intervene in each other's obviously illegal actions.

24. Plaintiffs have been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

25. The above paragraphs are here incorporated by reference.

26. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and

they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

27. The City has been alerted to the regular use of false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

28. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

29. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the

NYPD, once finding misconduct by an officer.

30. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

31. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

32. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiffs' complaints to the CCRB from the first day of the incidents complained of, the City has failed to remedy the wrong.

33. Plaintiff has been damaged as a result of the deliberate indifference of the City and

Kelly to the constitutional rights of the City's inhabitants.

### THIRD CAUSE OF ACTION
(ASSAULT)

34. The above paragraphs are here incorporated by reference.

35. Defendants made plaintiffs fear for their physical well-being and safety and placed them in apprehension of immediate harmful and/or offensive touching.

36. Plaintiffs were damaged by defendants' assault.

### FOURTH CAUSE OF ACTION
(BATTERY)

37. The above paragraphs are here incorporated by reference.

38. Defendants engaged in and subjected plaintiff Rawatiraman to immediate harmful and/or offensive touching and battered him.

39. Plaintiff was damaged by defendants' battery.

### FIFTH CAUSE OF ACTION
(FALSE ARREST AND ILLEGAL IMPRISONMENT)

40. The above paragraphs are here incorporated by reference.

41. Defendants subjected plaintiffs to false arrest, false imprisonment, and deprivation of liberty without probable cause.

42. Defendants intended to confine plaintiffs.

43. Plaintiffs were conscious of the confinement and did not consent to it.

44. As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiffs were damaged.

### SIXTH CAUSE OF ACTION
(CONSTITUTIONAL TORT)

45. All preceding paragraphs are here incorporated by reference.

46. Defendants, acting under color of law, violated plaintiffs' rights pursuant to §§6 and 12 of the New York State Constitution.

47. A damages remedy here is necessary to effectuate the purposes of §§6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiffs' rights under those sections.

## SEVENTH CAUSE OF ACTION
(RESPONDEAT SUPERIOR)

48. The preceding paragraphs are here incorporated by reference.

49. Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

50. As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, plaintiffs were damaged.

## EIGHTH CAUSE OF ACTION
(NEGLIGENT HIRING AND RETENTION)

51. The above paragraphs are here incorporated by reference.

52. Defendant officers had a bad disposition and the City knew or should have known of facts that would have led reasonable and prudent people to further investigate the defendant officers' bad dispositions through the hiring and retention process.

53. Defendants knew or should have known that their failure to investigate defendant officers' bad dispositions would lead to plaintiffs' injuries.

54. Defendants were negligent in their hiring and retaining the officers involved in this case in that they knew or should have known of the officers' propensity to use excessive force and to make false arrests.

55. The injuries to plaintiffs were caused by the officers' foreseeable use of excessive force.

## NINTH CAUSE OF ACTION
(TRESPASS)

56. All preceding paragraphs are here incorporated by reference.

57. On the date of this incident, plaintiff and his child A.P. resided at 107-35 127th St., Queens, NY. Defendants voluntarily and intentionally entered the home of plaintiffs without their consent.

58. As a result of this illegal trespass without a warrant, plaintiffs were damaged.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.  In favor of plaintiffs in an amount to be determined by a jury for each of plaintiff's causes of action;

B.  Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C.  Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D.  Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED:   Brooklyn, New York
         March 2, 2012

TO:   New York City
      Corporation Counsel Office
      100 Church Street, 4th floor
      New York, NY 10007

      Officer Jennifer Cittadino
      106th Precinct
      103-53 101st Street
      Ozone Park, NY, 11417

Very truly yours,

*[signature]*

Stoll, Glickman & Bellina, LLP
By: Nicole Bellina
Attorney for Plaintiff
475 Atlantic Ave. 3rd Fl.
Brooklyn, NY 11217
(718) 852-3710
nicole_bellina@yahoo.com